**SHEARSON HAYDEN STONE, INC., Plaintiff,**

v.

**Susan SCRIVENER, Defendant.**

**No. 79 Civ. 4658 (LFM).**

United States District Court, S. D. New York.

Nov. 26, 1979.

---

Willkie Farr & Gallagher, New York City, by Michael B. Targoff and John M. McEnany, New York City, for plaintiff.

## OPINION

MacMAHON, District Judge.

Plaintiff, Shearson Hayden Stone, Inc. ("Shearson"), moves, pursuant to Rule 64, Fed.R.Civ.P., and New York CPLR § 6211(a) (McKinney Supp.1978), to confirm an order attaching property of defendant, Susan Scrivener ("Scrivener") up to the amount of $112,935.91. The order was granted ex parte August 1, 1979 by the Hon. Michael J. Dontzin, Supreme Court, New York County. Defendant cross-moves to vacate the order, pursuant to CPLR § 6223. Since both motions raise the same issues, we consider them together.

On August 1, following the entry of the order, an effective levy appears to have been made by a New York City Sheriff on defendant's securities account at the New York office of Dean Witter Reynolds & Co. ("Dean Witter"), the garnishee. Plaintiff moved to confirm the order of attachment within five days,[1] and defendant removed the proceeding to this court on September 5, 1979, pursuant to 28 U.S.C. § 1441.

Before an order confirming an order of attachment can issue, CPLR § 6212(a) requires the plaintiff to show that: (1) he has a cause of action; (2) success on the merits is probable; (3) a ground for attachment exists under CPLR § 6201; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.

Defendant does not dispute that Shearson has satisfied the first and third of these requirements. A summary of the tangled web of facts giving rise to this action is necessary, however, in order properly to assess whether plaintiff has satisfied the remaining requirements.

Scrivener is a British citizen residing in Hong Kong. Prior to July 6, 1979, she maintained a commodities account at the

Coudert Brothers, New York City, by James M. Rhodes, New York City, for defendant.

---

1. *See* CPLR § 6211(b).

Hong Kong branch of Loeb Rhoades, Hornblower & Co. ("Loeb Rhoades"), which was used to trade futures contracts in gold on Comex, a commodity futures market in New York. This account consisted primarily of gold contracts sold short at an average price of $292 and deliverable in December 1979. Scrivener also maintained a separate securities account at the same office which, until July 6 of this year, at all times contained a margin adequate to cover any deficit in her gold position.

During the summer of 1979, Loeb Rhoades and Shearson were in the process of merging their operations. In accordance with their plan of merger, arrangements were made to transfer all commodities accounts belonging to Loeb Rhoades' clients to Shearson on July 6. Securities accounts were to follow on July 13.

Loeb Rhoades explained this plan to its clients in a "negative consent letter," which provided that the transfers would take place unless the client specifically directed otherwise. Accompanying this letter was a Statement of Credit Terms from Shearson which provided, in part:

> "On all securities which the firm has or at any time may hold or carry for you . . the firm as pledgee has a general lien for the discharge of all your obligations to it however arising and irrespective of the number of accounts you have with it. The firm may require you to deposit additional collateral in the form of cash or securities in accordance with . . . the firm's own minimum house margin maintenance requirement for securities approved by it for margin. *If such additional collateral is requested by the firm, and is not deposited in your account(s), securities in your account(s) may be sold to reduce or satisfy your debit balance . . . . The firm also retains the right to require you to deposit additional collateral as it, in its sole discretion, may determine is needed as security for your obligations to the firm.*" (Emphasis added.)

**2.** Defendant contends her husband also ordered transfer of her commodities account to Dean Witter at the same time. The authorization

Scrivener's commodities account was transferred to Shearson on July 6, as planned. Although there was inadequate equity to margin defendant's gold position, Shearson did not take any action because of the expected transfer of her securities account the following week.

Defendant's husband, John Scrivener, was an employee of Loeb Rhoades until July 6, 1979, when he commenced employment with Dean Witter. He had authority at all times to trade in all accounts held by his wife. On July 6, the same day Mr. Scrivener ceased working at Loeb Rhoades and his wife's commodities account was transferred to Shearson, he ordered her securities account transferred to the Hong Kong office of Dean Witter.[2] Accordingly, none of her securities were transferred to Shearson on July 13, as planned; no one, however, seems to have known their whereabouts in the succeeding weeks.

On July 25 or 26, Shearson notified defendant that her commodities account was undermargined and demanded that she deposit additional equity to make up the deficit in her gold position. Defendant's husband completed one transaction resulting in a credit of $64,419.33 to his wife's account, but it still remained undermargined.

On July 27, having received no additional equity to cover the deficit in defendant's account, Shearson liquidated her gold position, resulting in a loss of $164,893.11 on the gold futures contracts. After applying the above-mentioned credit of $64,419.33 to this figure, the net debit balance in Scrivener's account was $101,473.78. It is this amount which plaintiff seeks to recover.

Throughout this series of transactions, defendant's husband consistently made clear his desire to protect his wife's gold position and in fact assured Shearson that he would personally make up any deficit in her commodities account. His efforts to transfer the account from Shearson to Dean Witter prior to its liquidation July 27 were

which was sent to Loeb Rhoades, however, lists only her securities.

also unavailing since Dean Witter contended that it had received none or only some of the securities which were to be used to margin the deficit in Scrivener's gold position.

The fact remains, however, that when Shearson demanded that the deficit be made up, no additional equity was in fact forthcoming other than the credit of $64,-419.33; nor were there any securities in Shearson's possession upon which it could rely for satisfaction of the obligation represented by the account deficit. Moreover, this unfortunate separation of defendant's obligation from its security seeks to have been entirely the doing of her husband, since it was he who first directed the transfer of defendant's securities account from Loeb Rhoades to Dean Witter.

 Under these circumstances, Shearson's liquidation of Scrivener's gold position seems to have been necessary to protect itself from further loss. Moreover, it appears to comply with the procedure described in the Statement of Credit Terms sent to the defendant.

Accordingly, we conclude, as we must before an order of attachment may be confirmed pursuant to CPLR § 6212(a), that plaintiff will probably succeed on the merits in a suit to recover the net deficit of $101,-473.78 in defendant's commodities account.

Plaintiff must also show that "the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." [3] Defendant contends that she has a valid counterclaim for $217,500 which represents the losses she may have incurred due to the allegedly wrongful liquidation of her gold position. Our conclusion that plaintiff will probably succeed on the merits casts doubt on the proposition that the liquidation was wrongful, but, in any event, we need consider only those counterclaims which the plaintiff is willing to concede as just.[4] Plaintiff vigorously disputes the validity of defendant's counterclaim, and we

therefore find that it has satisfied its burden as to the final requirement of New York's attachment statute.

Accordingly, we grant plaintiff's motion to confirm the order of attachment issued in this case on August 1, 1979 and deny defendant's cross-motion to vacate such order.

So ordered.

---

3. CPLR § 6212(a).

4. *Burt Printing Co. v. Middle East Media Corp.,* 80 F.R.D. 449, 451 (S.D.N.Y.1978); *American*

*Jerex Co. v. Universal Aluminum Extrusions, Inc.,* 340 F.Supp. 524 (E.D.N.Y.1972); *see* 7A Weinstein-Korn-Miller § 6212.05 at 62–90.