SHEARSON HAYDEN STONE, INC., Plaintiff,

v.

Susan SCRIVENER, Defendant and Third-Party Plaintiff-Appellee,

v.

LOEB RHOADES HORNBLOWER & COMPANY, Third-Party Defendant,

Dean Witter Reynolds Inc., Third-Party Defendant-Appellant.

No. 433, Docket 81–7592.

United States Court of Appeals, Second Circuit.

Argued Nov. 5, 1981.

Decided Jan. 4, 1982.

J. Robert Lunney, New York City (David L. Dephtereos, Lunney & Crocco, New York City, of counsel), for third-party defendant-appellant.

Charles B. Cummings, New York City (Baker & McKenzie, New York City, of counsel), for defendant and third-party plaintiff-appellee.

Before WATERMAN, OAKES * and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

We are asked to determine in this case of first impression whether the failure of a brokerage firm to open a commodities account is a transaction subject to the arbitration regulations of the Commodities Futures Trading Commission (CFTC), 17 C.F.R. § 180.1 *et seq.* (1981). The district court held that it is. *Shearson Hayden Stone, Inc. v. Scrivener*, No. 79–4658 (S.D. N.Y. July 24, 1981). We disagree. We believe that the CFTC arbitration regulations were not intended to apply where a brokerage firm has yet to handle a customer's commodities account.

### BACKGROUND

This appeal comes by way of a judgment of the United States District Court for the Southern District of New York, Goettel, *J.*, which denied a motion by third-party defendant Dean Witter Reynolds Inc. ("DWR") to stay all proceedings against it pending arbitration. We assume familiarity with the facts giving rise to this litigation, which are described at length in an earlier decision, *Shearson Hayden Stone, Inc. v. Scrivener*, 480 F.Supp. 256 (S.D.N.Y. 1979). Accordingly, we limit ourselves to a brief review of the pertinent facts.

Prior to the 1979 merger of Loeb Rhoades, Hornblower & Co. ("Loeb Rhoades") and Shearson Hayden Stone, Inc. ("Shearson"), third-party plaintiff Susan Scrivener maintained a commodities account at the Hong Kong branch of Loeb Rhoades. She also maintained a securities account at the same branch which constitut-

ed adequate margin to offset a substantial deficit position in her commodities account. Upon the merger of Shearson and Loeb Rhoades, Scrivener's commodities account was transferred to Shearson. The securities account, however, was never transferred. Instead, it was sent to DWR by orders of Scrivener's husband, who had just terminated his employment with Loeb Rhoades and had begun working for DWR.

Without the securities account, Scrivener's commodities account was vastly undermargined, and Shearson so informed Scrivener a short time later. While some equity was produced, the commodities account remained substantially undermargined, causing Shearson to liquidate the account. Following the liquidation, the net debit in the account was approximately $100,000.

Shearson then sought to recover its losses from the liquidation, beginning by suing Scrivener in the Supreme Court, New York County. The case was removed to the United States District Court for the Southern District of New York where Shearson obtained an order of attachment on Scrivener's securities account at DWR. 480 F.Supp. 256 (S.D.N.Y.1979). At that point, in addition to counterclaiming against Shearson, Scrivener filed a third-party complaint against DWR alleging, among many claims, that DWR was liable for wrongfully failing to accept her commodities account. The crux of Scrivener's argument was that DWR had given assurances that it would accept her commodities account and then wrongfully refused to do so.

DWR immediately moved to stay the proceedings against it pending arbitration pursuant to 9 U.S.C. § 3 (1976). DWR based its request for arbitration on clauses contained in a "Customers Agreement" and an "Options Trading Agreement" that Scrivener had signed.[1] Scrivener opposed the mo-

---

* After oral argument Judge Oakes disqualified himself. In accordance with § 0.14(b) of the Rules of this Court this appeal was decided solely by the two remaining members of the panel who are in agreement and who do not request the designation of a third judge.

1. Paragraph 16 of the Customer Agreement provides:

   Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the

tion, however, asserting that the arbitration clauses were unenforceable because they failed to comply with the CFTC's requirement that arbitration agreements be voluntarily made. 17 C.F.R. § 180.3(a) (1981).

## DISCUSSION

A brief review of the CFTC arbitration regulations will facilitate an understanding of the issue on appeal. The regulations require a customer's voluntary consent to an arbitration clause as a precondition to enforceability. To that end, the regulations "prohibit any agreement or understanding pursuant to which customers . . . agree to submit claims or grievances for settlement under said procedures prior to the time when the claim or grievance arose, except in accordance with [certain specified conditions]." 17 C.F.R. § 180.3(a).

The term "claim or grievance" is defined as:

> any dispute which arises out of any transaction on or subject to the rules of a contract market, executed by or effected through a member of that contract market or employee thereof which dispute does not require for adjudication the presence of essential witnesses or third parties over whom the contract market does not have jurisdiction and who are not otherwise available. The term claim or grievance does not include disputes arising from cash market transactions which are not a part of or directly con-

nected with any transaction for the purchase or sale of any commodity for future delivery.

17 C.F.R. § 180.1(a). We see no reason to quote the conditions at length since it is undisputed in this case that they were not met. It will suffice to say that among the conditions are that the customer sign separately the clause providing for arbitration and that the agreement include a warning in bold-face type that the customer is yielding certain rights to assert his claim in court.

The sole issue throughout this phase of the litigation has been whether Scrivener's complaint against DWR asserts a commodities "claim or grievance" subject to these regulations. If it does, there can be no enforcement of the arbitration clauses which serve as the basis for DWR's motion for a stay. The district court aptly summarized the positions of the parties on this issue:

> DWR argues that there can be no commodities claim unless there is an opened commodities account. Scrivener responds that the failure to open her commodities account creates a commodities claim.

No. 79–4658 at 4 (S.D.N.Y. July 24, 1981). The district court declared that resolving this perplexing question "is like trying to answer the riddle of which came first, the chicken or the egg." *Id.* Nevertheless, the district court attempted to unscramble the riddle, beginning with the definition of the

---

rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

Paragraph 6 of the Options Trading Agreement provides:

> Any controversy between us arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Arbitration Association, the Board of Arbitration of the New York Stock Exchange, the American Stock Exchange, the Chicago Board Options Exchange or the National Association of Securities Dealers Inc. as I [the customer] may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then I authorize you to make such election in my behalf.

term "claim or grievance" quoted above.[2] The district court concluded that the transfer of Scrivener's account was a transaction "subject to the rules of a contract market" and that her "claim against DWR is thus within the definition of 'claim or grievance.'" Accordingly, the court declared the pre-dispute arbitration clauses unenforceable and denied DWR's motion for a stay.

■ We begin our analysis, as did the district court, with the definition of "claim or grievance" under 17 C.F.R. § 180.1(a). *Cf. Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). It is arguable that the opening of a commodities account is a transaction "subject to the rules of a contract market." Nevertheless, our review of the overall scheme of the CFTC arbitration provisions leads us to conclude that where a brokerage firm has yet to handle a customer's commodities account, the CFTC arbitration regulations are inapplicable.[3]

We can find no reference to the opening of commodities accounts in either the regulations or in the CFTC's comments which introduced them. Quite to the contrary, the language of the regulations consistently refers to arbitration of events occurring after the opening of a commodities account. For example, the cautionary language which must appear in the customer agreement to create an enforceable arbitration clause includes:

WHILE THE COMMODITY FUTURES TRADING COMMISSION (CFTC) RECOGNIZES THE BENEFITS OF SETTLING DISPUTES BY ARBITRATION, IT REQUIRES THAT YOUR CONSENT TO SUCH AN AGREEMENT BE VOLUNTARY. *YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH [name].*

. . . .

2. The district court actually analyzed the issue in two separate opinions using very different approaches. In the first decision, dated February 26, 1981, Judge Goettel sought to determine whether Scrivener's complaint stated a cause of action under the Commodities Act. He found that "a commodities claim might possibly be gleaned from Dean Witter's allegedly wrongful refusal to accept Scrivener's commodities account . . . ." No. 79–4658 at 4 (S.D. N.Y. Feb. 26, 1981). Nevertheless, Judge Goettel held that such a claim would have to be stated more explicitly, and therefore held that "the motion to compel arbitration is denied at this time without prejudice to renew if Scrivener fails to state a commodities claim in her amended third-party complaint." *Id.*

In the second opinion, dated July 24, 1981, Judge Goettel held that the amended third-party complaint still failed to state a commodities cause of action with sufficient particularity. Accordingly, he dismissed the only cause of action which could be "gleaned" to state a commodities claim. Notwithstanding his determination that the complaint failed to allege a cause of action under the Commodities Act, Judge Goettel found that Scrivener's allegation of DWR's wrongful conduct fell within the definition of the term "claim or grievance" under the CFTC arbitration regulations, 17 C.F.R. § 180.1 (1981).

We agree that Scrivener's complaint is devoid of any cause of action under the Commodities Act and therefore focus, as did Judge Goettel ultimately, on the language and history of the CFTC regulations.

3. 17 C.F.R. § 180.1(a) by its terms refers to transactions which have been "executed by or effected through a member of that contract market or employee thereof . . . ." In the present case, the transfer of Scrivener's account never took place. It is therefore arguable that whether or not the alleged wrongful conduct arises from a "transaction," since the transaction was never executed or effected, the CFTC regulations should not apply.

Scrivener urges us to look beyond the regulation to the CFTC's comments accompanying 17 C.F.R. § 180.1(a), 41 Fed.Reg. 27,520, 27,521 (July 2, 1976) which state:

Briefly, rule § 180.1, as adopted by the Commission, defines the term "claim or grievance" to mean any dispute which arises out of any transaction executed on a contract market or proposed to be executed by a member of a contract market or employee thereof.

Since Scrivener's complaint alleges that the transfer of her account had been "proposed," she argues that "the transfer trades proposed . . . were 'effected through' Dean Witter within the meaning of the regulation, even though they were never completed." Brief for Scrivener at 15.

In light of our holding that Scrivener's claim against DWR does not arise from a "transaction" within the meaning of 17 C.F.R. § 180.-1(a), we leave the issue of whether the regulation encompasses proposed transactions for another day.

17 C.F.R. § 180.3(b)(4) (emphasis added). Thus, we believe that the CFTC had in mind arbitration relating only to events occurring after the account was opened.

Similarly, the regulations repeatedly refer to "the futures commission merchant, floor broker, or associated person," individuals typically engaged in the purchase or sale of futures contracts and not in the procedural technicalities of opening accounts. Indeed, § 180.3(b) provides:

(b) No futures commission merchant, floor broker or associated person shall enter into any agreement or understanding with a customer in which the customer agrees, prior to the time the claim or grievance arises, to submit such claim or grievance to any settlement procedure except as follows:

(1) Signing the agreement must not be made a condition for the customer to utilize the services offered by the futures commission merchant, floor broker or associated person;

(2) If the agreement is contained as a clause or clauses of a broader agreement, the customer must separately endorse the clause or clauses containing the cautionary language and other provisions specified in this section;

. . . .

We think it clear that the "services" to which § 180.3(b) refers involve purchase and selling transactions.

Moreover, we believe that the reference in § 180.3(b)(2) to the possibility of the arbitration provision being only "a clause or clauses of a broader agreement" is addressed to cases in which the forms used to open the account contain an arbitration agreement. The CFTC could not have intended its regulations to apply to disputes pre-existing the opening of the commodities account where the arbitration clause itself would not become effective until the customer agreement was signed and the account opened.

█ In addition, we find support for our interpretation in both the purposes of the regulations and in the CFTC administrative history. *See* 41 Fed.Reg. 42,942 (Sept. 29, 1976); 41 Fed.Reg. 27,520 (July 2, 1976); 40 Fed.Reg. 54,430 (Nov. 24, 1975); 40 Fed. Reg. 34,152 (Aug. 14, 1975); 40 Fed.Reg. 29,121 (July 10, 1975). The regulations themselves were a response to perceived irregularities in the use of arbitration in the commodities futures industry. As we stated in *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174, 1178 (2d Cir. 1977):

It . . . became apparent that in many cases arbitration was not undertaken voluntarily by customers, but that customers were compelled to agree to predispute arbitration clauses as a precondition to doing business. Indeed, this practice was found to be so prevalent that a customer might effectively be frozen out of the futures market if he refused to execute a predispute agreement.

Thus, the regulations were intended to ensure that a customer could trade futures contracts without first agreeing to arbitrate disputes which might arise from those transactions. The evil sought to be eradicated through promulgation of the arbitration regulations hardly involved the opening of commodities accounts.

That the term "transaction" refers to trading rather than to the procedural technicalities involved in opening an account is further demonstrated by several comments by the CFTC in its introduction of the regulations. For example, the CFTC, in its General Statement of Basis and Purpose, stated:

Briefly, rule § 180.1, as adopted by the Commission, defines the term "claim or grievance" to mean any dispute which arises out of *any transaction executed on a contract market or proposed to be executed* by a member of a contract market or employee thereof.

41 Fed.Reg. 27,520, 27,521 (July 2, 1976) (emphasis added). In another discussion of the regulations' scope, the CFTC similarly stated:

The Commission's rules relating to arbitration and other dispute settlement procedures were intended to be and are ap-

plicable only to claims or grievances arising out of transactions effected on contract markets—that is, boards of trade designated as contract markets by the Commission under the Act.

41 Fed.Reg. 42,942, 42,946 (Sept. 29, 1976). These and other comments consistently use the term "transaction" within the context of trading executed or effected on contract markets.

■ Scrivener also challenges the arbitration clauses on the grounds that they are unenforceable under the regulations of the Securities and Exchange Commission and that the clauses by their terms are too narrow to cover the instant disputes. We note, however, that these claims have never been raised before the district court despite Scrivener's repeated opportunities to do so.[4] "Under these circumstances, we see no reason to depart from the general rule of practice which forecloses appellate consideration of issues not raised below." *Terkildsen v. Waters*, 481 F.2d 201, 204 (2d Cir. 1973).

The judgment of the district court is reversed, and the case is remanded with instructions to grant DWR's motion for a stay as to it pending arbitration.

## ON PETITION FOR REHEARING
## PER CURIAM:

Susan Scrivener petitions for rehearing, contending primarily that we have misconstrued the issue presented in this case. Our focus to this point has been on whether a brokerage firm which has yet to handle a customer's commodities account should be subject to the arbitration regulations of the Commodities Futures Trading Commission (CFTC), 17 C.F.R. § 180.1 *et seq.* (1981). We answered this question negatively in our earlier opinion. In doing so, we examined whether the CFTC regulations were intended to apply where a brokerage firm has failed to open a customer's account. Scrivener argues in her petition for rehearing that she had actually opened a commod-

ities account at DWR (*i.e.*, she completed the necessary customer forms and documents) and that DWR had subsequently failed to effect a transfer of her commodities positions from another firm. However, the fact remains that DWR never handled Scrivener's commodities account in any manner. We clearly held in our earlier opinion that "where a brokerage firm has yet to handle a customer's commodities account, the CFTC arbitration regulations are inapplicable." 671 F.2d at 683. We are not persuaded otherwise by Scrivener's petition for rehearing.

In addition, Scrivener reasserts her position that the arbitration clauses relied on in this case are unenforceable under the regulations of the Securities and Exchange Commission. In SEC Release No. 34–15984, 44 Fed.Reg. 40462, 40464 (1979), the Commission stated its view that "[c]ustomers should be made aware prior to signing an agreement containing an arbitration clause that such a prior agreement does not bar a cause of action arising under the federal securities laws." We find this policy inapplicable to the present case, however, because Scrivener has alleged no "cause of action arising under the federal securities laws."

■ Finally, we address Scrivener's claim that the arbitration clauses are too narrow to cover the instant dispute. The clause in the Customer Agreement provides for arbitration of "[a]ny controversy between you and the undersigned arising out of or relating to this contract . . . ." We find it difficult to imagine a broader arbitration clause.

Petition for rehearing denied.

---

4. As we observed, *see* note 2, *supra*, the district court has issued two memorandum decisions concerning DWR's motion for a stay during the course of this litigation. Scrivener could surely have presented these claims to the district court at any time after DWR moved for a stay and before the district court reached its final decision.