**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Peter REA, Defendant-Appellant.**

**No. 824, Docket 81–1463.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1982.

Decided May 3, 1982.

---

Leonard R. Rosenblatt, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Mary McGowan Davis, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for plaintiff-appellee.

Phylis Skloot Bamberger, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for defendant-appellant.

Before KAUFMAN and PIERCE, Circuit Judges, and HAIGHT,* District Judge.

PIERCE, Circuit Judge:

On December 11, 1979, appellant Peter Rea pleaded guilty to an information which charged him with conspiracy to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a). On February 15, 1980, imposition of sentence was suspended and Rea was placed on probation for a period of three years. Rea was required to comply with certain stated conditions of probation. These conditions included that appellant refrain from violating any federal, state, or local laws; that he not leave the Eastern District of New York without the permission of his probation officer; that he follow the probation officer's instructions and report as directed; and, that he report immediately to his probation

---

* Hon. Charles S. Haight, Jr., United States District Judge for the Southern District of New York, sitting by designation.

officer if arrested or questioned by a law-enforcement officer.[1]

On May 29, 1981, Rea was arrested by his probation officer, Christopher Swords, and was charged with having violated the conditions of his probation in that (1) he had left the Eastern District of New York and travelled to Washington, D. C. without the permission of his probation officer; (2) he was found in possession of illegal weapons, including a loaded .25 caliber revolver; and (3) he had neglected to inform his probation officer that he had been questioned by a New York City police officer following an auto accident which occurred on May 21, 1981. Appellant denied the charges filed against him, and a probation revocation hearing was held, following which Judge Neaher found that Rea had violated the conditions of probation; his probation was revoked and the judge imposed an eighteen month sentence of imprisonment.

The circumstances which led to appellant's arrest are not in dispute. On May 26, 1981, Probation Officer Swords received a telephone call from an anonymous person who stated that he had "information" regarding Rea. The caller stated that Rea had recently travelled outside the Eastern District of New York; that he had cocaine in his apartment; that he was in possession of a "phony Greek baptismal certificate"; that he had been involved in an automobile accident; and that he was involved in a scheme to defraud the American Express Company by submitting fraudulent claims for the replacement of travelers checks falsely reported lost or stolen. The caller told Swords that he had also informed an American Express Company employee of the travelers checks scheme. Swords then called the American Express employee, who confirmed that he had received a similar anonymous telephone call and that, based upon a preliminary investigation, the information appeared to be accurate.

On May 27, 1981, the day after he received the anonymous telephone call, Swords went to the 106th Precinct in Queens, where he checked the precinct records. These records indicated that Rea had apparently been involved in an automobile accident at approximately 3:00 a. m. on May 21, 1981, and had been questioned by a police officer of that precinct. Swords then interviewed the police officer, who confirmed that he had interviewed Rea after the accident.

Finally, on May 29, 1981, Swords went to the home of Rea and his common-law wife, Camille DeLucia. He was accompanied by three other probation officers. Two of the probation officers remained in the car while Swords and his partner, Victor Zaccheo, went to appellant's apartment and were

---

1. Appellant signed a standard form entitled "Conditions of Probation," which reads in full as follows:

CONDITIONS OF PROBATION

It is the order of the Court that you shall comply with the following conditions of probation:

(1) You shall refrain from violation of any law (federal, state, and local). You shall get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer.

(2) You shall associate only with law-abiding persons and maintain reasonable hours.

(3) You shall work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability. When out of work you shall notify your probation officer at once. You shall contact him prior to job changes.

(4) You shall not leave the judicial district without permission of the probation officer.

(5) You shall notify your probation officer immediately of any change in your place of residence.

(6) You shall follow the probation officer's instructions.

(7) You shall report to the probation officer as directed.

The special conditions ordered by the Court are as follows:

Ct. 1—Imposition of sentence suspended, probation 3 years.

I understand that the Court may change the conditions of probation, reduce or extend the period of probation, and at any time during the probation period or within the maximum probation period of 5 years permitted by law, may issue a warrant and revoke probation for a violation occurring during the probation period.

I have read or had read to me the above conditions of probation. I fully understand them and I will abide by them.

(Signed)    /s/ Peter Rea    2-15-80
            Probationer       Date

admitted by DeLucia. Rea appeared shortly thereafter, and he, DeLucia, Swords, and Zaccheo went into the dining room. Swords first asked Rea and DeLucia what was new. Both replied that "nothing was new." Swords then questioned Rea about his automobile, and began taking down numbers from Rea's operator's license. Appellant stated that he had been in a "minor accident." At that point, Swords revealed that he already knew about the accident, and asked whether appellant had been questioned by a police officer. Appellant stated that he had, and Swords reminded him of Condition 1 of his probation, which required that he report any questioning by a law-enforcement officer to his probation officer. Swords then told appellant that he had probable cause to believe that appellant was in violation of this condition of his probation.

Next, Swords asked Rea and DeLucia whether they objected to him and Zaccheo "having a look around." Rea and DeLucia stated that they did not object and Zaccheo went to summon the other two probation officers. When they returned Swords stated again that he had reason to believe that appellant was in violation of the conditions of his probation, and that the officers were going to conduct a "reasonable cause search." At that point, both Rea and DeLucia objected to the search, and DeLucia began crying and appeared to become somewhat hysterical. Swords suggested that DeLucia leave the apartment since the search did not involve her. After DeLucia left, Swords informed Rea of the information he had received from the anonymous telephone caller. Swords then asked specifically about the fraudulent baptismal certificates. Rea acknowledged having some, and gave them to the probation officers. The three other probation officers began to search the apartment while Swords and the appellant sat in the dining room. While the search was being conducted Swords asked appellant whether he had recently travelled outside the Eastern District of New York to Washington, D.C. Appellant replied that

he would rather not talk about that, and stated that he wanted to speak to an attorney before answering that question. Swords dropped the subject and asked where Rea had obtained the baptismal certificates. Rea responded that a friend had given them to him. Thereafter, for fifteen to twenty minutes Swords questioned Rea about the alleged American Express fraud. Rea admitted his involvement and supplied information with regard to another participant in the scheme. During this discussion defendant stated that he had gone to Washington, D.C. on May 7, 1981 in order to cash American Express travelers checks.

The search of Rea's apartment led to the discovery of a loaded pistol and ammunition, holsters, knives, tear gas pellets, marijuana, and a triple beam scale. After the search was completed Swords left the apartment to telephone his supervisor to obtain authorization to arrest the appellant. He received this authorization, returned, and arrested Rea for violation of the terms of probation.[2]

On June 4, 1981, Judge Neaher held a probation revocation hearing. Appellant was represented by counsel who argued that any evidence seized in the warrantless search of Rea's home, as well as any statements made by him after his request for counsel was ignored, were inadmissible at the hearing. The Government contended that a probation officer can lawfully search a probationer's home without a warrant, and that a probationer has no right to counsel when answering questions posed by his probation officer during the course of supervision.

On September 21, 1981, Judge Neaher issued an opinion in which he found that both the evidence seized by Swords and the statements made by Rea after his request for counsel was ignored, were admissible in evidence at the probation revocation hearing. 524 F.Supp. 427. Judge Neaher then found that appellant had violated the conditions of his probation. Consequently, he

---

**2.** On June 1, 1981 defendant was released on a personal recognizance bond in the amount of $50,000. He remains free on bond pending determination of this appeal.

revoked probation and on October 21, 1981 he sentenced Rea to an eighteen month term of imprisonment. Execution of this sentence was stayed pending disposition of this appeal.

On this appeal the Court is faced with two significant issues.[3] First, we must determine whether the Fourth Amendment prohibition against unreasonable searches and seizures dictates that, absent the existence of one of the traditional exceptions to the warrant requirement, a probation officer is required to obtain a warrant before conducting a search of a probationer's home. If the warrant requirement does apply, the Court must determine whether the fruits of a warrantless search must be excluded in a subsequent probation revocation hearing.

Second, we must address Rea's claim that any self-incriminatory statements made to a probation officer after the probation officer has probable cause to believe that the probationer has violated the conditions of his probation, and after the probationer has requested an attorney, are inadmissible in evidence at a probation revocation hearing.

### I. Warrantless Search

#### A. The Warrant Requirement

In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court stated that:

> [T]he most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption ... that the exigencies of the

situation made that course imperative." *Id.* at 454–55, 91 S.Ct. at 2031–32 (footnotes omitted).

Among the types of searches which have been excepted from the warrant requirement are searches conducted incident to a lawful arrest, *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969); the seizure of contraband or evidence which is in the plain view of law enforcement officers, *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971); searches conducted pursuant to the consent of the individual searched,[4] *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973); *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir.), *cert. denied*, 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981); searches reasonably necessary to protect the safety of the law enforcement officer, *Terry v. Ohio*, 392 U.S. 1, 27–30, 88 S.Ct. 1868, 1883–84, 20 L.Ed.2d 889 (1968); and searches conducted under other exigent circumstances.

Although a probationer is subjected to conditions of probation which generally tend to diminish his otherwise valid expectations of privacy from intrusion by governmental authorities, a probationer " 'retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law.' " *United States v. Manfredonia*, 341 F.Supp. 790, 795 (S.D.N.Y.1972), *aff'd*, 459 F.2d 1392 (2d Cir.), *cert. denied*, 409 U.S. 851, 93 S.Ct. 61, 34 L.Ed.2d 93 (1972) (quoting *Coffin v. Reichard*, 143 F.2d 443, 445 (6th Cir. 1944), *cert. denied*, 325 U.S. 887, 65 S.Ct. 1568, 89 L.Ed. 2001 (1945)).

---

**3.** On appeal appellant raises a third issue, which he did not raise below. He argues in this Court that Condition 1 of the "Conditions of Probation" is too vague to give adequate notice as to what constitutes proscribed behavior, and that therefore it is unenforceable. Since this claim was not raised below, and defendant will have an opportunity to raise it, if he wishes, on remand, we do not reach the

issue. *See Sales v. Harris*, 675 F.2d 532 (2d Cir. 1982); *Shearson Hayden Stone, Inc. v. Scrivener*, 671 F.2d 680 (2d Cir. 1982); *Terkildsen v. Waters*, 481 F.2d 201, 204 (2d Cir. 1973).

**4.** The Government does not argue that appellant consented to the probation officers' search of his apartment.

It is undisputed that none of the recognized exceptions to the warrant requirement apply to validate the search of Rea's apartment in this case. Therefore, we are squarely presented with the question of whether a person's status as a probationer creates an exception to the rule that searches other than those conducted under specific exceptional conditions must be authorized by a previously issued search warrant.

Section 3651 of Title 18 of the United States Code authorizes the United States district courts to suspend imposition or execution of sentence and place a defendant convicted of an offense which is not punishable by death or life imprisonment on probation "when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby." *See also* Rule 32(e), Fed.R.Crim.P. Section 3655 of Title 18 delineates the duties of probation officers. It provides, *inter alia*, that a probation officer "shall keep informed concerning the conduct and condition of each probationer under his supervision and shall report thereon to the court placing such person on probation," and that "he shall use all suitable methods, not inconsistent with the conditions imposed by the court, to aid probationers and to bring about improvements in their conduct and condition." Further, 18 U.S.C. § 3653 provides that "[a]t any time within the probation period, the probation officer may for cause arrest the probationer wherever found, without a warrant." However, no statutory provision authorizes a probation officer to conduct a warrantless search of a probationer's home. In addition, this Court is unaware of any case in which either the Supreme Court or this Circuit Court has held that either an individual's status as a probationer or the special relationship between a probationer and his probation officer serves to exempt the probation officer from the requirement that he obtain a warrant prior to conducting a search of a probationer's home.

It does not appear to this Court that requiring a probation officer to obtain a warrant prior to searching a probationer's home would interfere in any significant way with the dual rehabilitative and law enforcement functions of the probation officer. The established exceptions to the warrant requirement obviously would allow warrantless searches under specifically delineated circumstances. Further, a probation officer does not need a warrant to visit the home of a probationer. *See Diaz v. Ward*, 506 F.Supp. 226, 228–29 (S.D.N.Y. 1980); *cf., Wyman v. James*, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). Thus, a probation officer is entitled to conduct a warrantless search in those circumstances in which a police officer may conduct such a search, with the advantage that the probation officer can enter the probationer's home without a warrant in order to make supervisory visits.

In *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), the Ninth Circuit reached a decision which is contrary to that reached here. Our view is more consonant with the reasoning set out by Judge Hufstedler in her dissent in that case. As she points out, indiscriminate searches are likely to undermine, rather than advance, the rehabilitative goals of the probation system. *Id.* at 258.

We are unaware of any means, other than a warrant requirement, by which the right to be free of unreasonable searches can be effectively protected. "[A]buse of discretion is more easily prevented by prior judicial approval than by *post hoc* judicial review." *United States v. Bradley*, 571 F.2d 787, 790 (4th Cir. 1978).

■ As stated previously, no statutory provision exempts a probation officer from the requirement that he obtain a warrant before searching the home of a probationer. There also has been no showing that upholding the warrant requirements for searches of probationers' homes will seriously impede the accomplishment of the dual law enforcement and rehabilitative goals of probation. Therefore, we hold that a probation officer is required to obtain a warrant prior to conducting a search of a pro-

bationer's home unless the search falls within a judicially recognized exception to the warrant requirement.

## B. *Applicability of the Exclusionary Rule*

■ Having so held, we also now hold that evidence seized by a probation officer in an illegal warrantless search of a probationer's home is inadmissible at a subsequent probation revocation hearing. This result is dictated by the principles set forth in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), and *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161 (2d Cir. 1970).

The rule that evidence seized in violation of the Fourth Amendment is inadmissible in a criminal proceeding against the search victim is not intended to, and cannot, repair the injury done to the privacy rights of the victim. As the Supreme Court stated in *Calandra*,

> Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures:
>
>> "The rule is calculated to prevent, not repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by revoking the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960).
>
> In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved. 414 U.S. at 347–48, 94 S.Ct. at 619–20.

The exclusionary rule is thus designed to deter future unlawful conduct on the part of law enforcement officers, and therefore the rule is to be applied in those instances when its deterrent purpose is likely to be served. *United States v. Calandra, supra,* 414 U.S. at 348, 94 S.Ct. at 620; *United*

*States v. Winsett*, 518 F.2d 51, 53–54 (9th Cir. 1975); *United States ex rel. Sperling v. Fitzpatrick, supra*, 426 F.2d at 1164 (2d Cir. 1970). So, in deciding whether to extend the exclusionary rule to probation revocation hearings "we must weigh the potential injury" to the fact-finding process as a result of the exclusion of relevant evidence "against the potential benefits of the rule as applied in this context." *United States v. Calandra, supra*, 414 U.S. at 338, 94 S.Ct. at 615. The courts which decided *Calandra, Janis,* and *Sperling* engaged in this balancing process, and in each instance determined that application of the exclusionary rule under the specific circumstances presented would be unlikely to have any significant beneficial deterrent impact on the behavior to be deterred. Thus, in *Calandra*, the Supreme Court pointed out that since, under existing law, illegally obtained evidence cannot be used in the criminal prosecution of a search victim, application of the exclusionary rule to grand jury proceedings would deter only illegal police searches consciously directed towards discovering and collecting evidence solely for use in grand jury proceedings. It therefore held that it would not "embrace a view that would achieve a speculative and undoubtedly minimal advance in the deterrence of police misconduct at the expense of substantially impeding the role of the grand jury." 414 U.S. at 351–52, 94 S.Ct. at 621–22.

In *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Supreme Court addressed the claim that the exclusionary rule should apply to render evidence illegally seized by state law enforcement officers inadmissible in a civil proceeding brought by the United States to collect unpaid taxes. The *Janis* Court applied the balancing test mandated by *Calandra* and held that the exclusionary rule would not apply in the civil proceeding since "the deterrent effect of the exclusion of relevant evidence is highly attenuated when the 'punishment' imposed upon the offending criminal enforcement officer is the removal of that evidence from a civil

suit by or against a different sovereign." 428 U.S. at 458, 96 S.Ct. at 3034.

In *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161 (2d Cir. 1970), this Court invoked the same type of analysis as was later mandated by *Calandra* and *Janis*. There, Sperling, a parolee,[5] was unlawfully searched, and then arrested for possession of a loaded .38 caliber pistol, by New York City police officers *who did not know* that he was on parole at the time of the search. Sperling was indicted for possession of the weapon, but after a motion to suppress the evidence was granted the indictment was dismissed. Subsequently, however, Sperling's parole was revoked by the parole board, based on his possession of the weapon discovered in the illegal search. At his revocation hearing, Sperling contended that it was improper for the parole board to consider the illegally seized pistol in reaching its determination that he had violated the conditions of his parole. The parole board disagreed and upon appeal this Court held that the exclusionary rule was inapplicable in Sperling's revocation hearing before the parole board. This finding reflected the view that the deterrent purpose of the exclusionary rule would not be significantly advanced by a double application of the exclusionary rule—first to prevent the criminal prosecution of the parolee, and then to suppress the illegally seized evidence in a parole revocation hearing in which the offending police officers could not possibly have had an interest at the time they conducted the illegal search. 426 F.2d at 1164.[6]

Our application of the balancing principles mandated by *Calandra*, and applied in *Janis* and *Sperling*, to the facts of this case convinces us that the deterrent effect to be gained by applying the exclusionary rule in probation revocation hearings to bar the use of evidence illegally seized by probation officers substantially outweighs the potential injury to the function of those proceedings. Clearly, any suppression of evidence impedes the fact-finding function of the court in that it removes relevant evidence from its consideration. However, as stated above, the warrant requirement will not interfere significantly with either of the dual functions of probation. Since a warrant can be obtained *ex parte*, and generally quickly,[7] and since in exigent circumstances the normal exceptions to the warrant requirement would apply, the law enforcement function of probation officers is unlikely to be hampered. In this case, for example, there apparently was no reason why the probation officer could not have

---

**5.** Technically Sperling was a mandatory releasee, who was " 'deemed as if released on parole' and subject to the jurisdiction of the United States Board of Parole" pursuant to 18 U.S.C. § 4164. *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161, 1162 n.1 (2d Cir. 1970).

**6.** *See also United States v. Winsett*, 518 F.2d 51 (9th Cir. 1975), in which the Ninth Circuit held that "the Fourth Amendment does not require suppression of evidence in a probation revocation proceeding where, at the time of the arrest and search, the police *had neither knowledge nor reason to believe that the suspect was a probationer.*" *Id.* at 55 (emphasis added). The *Winsett* court distinguished the case before it from *Verdugo v. United States*, 402 F.2d 599 (9th Cir. 1968), *cert. denied*, 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1970). In *Verdugo* the Ninth Circuit applied the exclusionary rule to sentencing proceedings where the police had a stake in ensuring that the appellant received a long sentence, and might have collected evidence with the knowledge that it would be inadmissible in the criminal proceeding, but

admissible at sentencing. The *Winsett* court then stated:

> Similarly, when the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing at risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards. 518 F.2d at 52 n.5.

**7.** *See, e.g.*, Fed.R.Crim.P. Rule 41(c)(2)(A), which provides for issuance of a warrant "upon sworn oral testimony communicated by telephone or other appropriate means."

obtained a warrant prior to going to Rea's home. He did not go to Rea's home until three days after he received the anonymous telephone call; he took time to verify the information provided; and he had ample time to apply to a judicial officer for a search warrant. In addition, the rehabilitative goals of probation are not apt to be furthered by either the threat or the practice of unauthorized warrantless searches. On the other hand, a probation officer who seeks to discover and seize evidence for use in a probation revocation hearing is very likely to be deterred from proceeding without a warrant if the officer knows that evidence so seized is apt to be excluded from the very proceeding with which he is concerned.

For all of these reasons, the exclusionary rule must be applied in probation revocation proceedings to bar the use of evidence illegally seized by probation officers.

## II. Admissibility of Defendant's Statements

■ Appellant contends that at the probation revocation hearing Judge Neaher should have granted his motion to suppress all statements made after Swords informed Rea that he had probable cause to believe that appellant had violated the conditions of his probation, and after appellant stated that he wished to consult an attorney before answering Swords' question about travelling outside the Eastern District of New York. He argues that the interrogation was custodial and that as a result the admission of the statements in evidence was in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). This claim is without merit.

The duty "to report" and to answer questions posed by a probation officer is an integral obligation of the probationary status. While a probationer is not deprived completely of his Fifth Amendment rights and may assert them, he runs the risk that his refusal to answer will lead to a charge of violation of probation. Any other rule would make a mockery of the supervision aspect of probation.

Appellant's Sixth Amendment rights were not violated by the failure to suppress statements made after he stated that he wished to consult an attorney. The rule enunciated in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), is inapposite. In *Edwards* the Supreme Court found that self-incriminatory statements made by a pre-trial detainee in the absence of counsel should have been suppressed at trial. While a pre-trial detainee has a right to remain silent and to have an attorney present during questioning by the police, a probationer does not have an equivalent right when called upon to respond to the supervision efforts of his probation officer.

Further, when Rea told Swords that he wished to consult an attorney before answering Sword's question regarding his leaving the Eastern District of New York, Swords moved on to another topic without pressing the point. Rea later brought up his trip to Washington, D.C. himself while discussing the alleged scheme to defraud the American Express company.

Rea had no right to have a lawyer present during an interview with his probation officer. Thus, the issue of waiver, which was key to the decision in *Edwards*, is not present here. A criminal defendant's " 'undisputed right' under *Miranda* to remain silent and to be free of interrogation 'until he had consulted with a lawyer' ", *Edwards, supra*, at 485, 101 S.Ct. at 1885 (quoting from *Rhode Island v. Innis*, 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980), is in no way implicated in this case. Therefore, Rea's statements were as voluntary as any made during the course of a probation interview ever are.

The judgment appealed from is vacated and the case is remanded to the district court for proceedings consistent with this opinion.