**UNITED STATES of America**

v.

**Falikou KONE, Defendant.**

No. 08 Cr. 557(SAS).

United States District Court,
S.D. New York.

Nov. 5, 2008.

Edward Y. Kim, Assistant United States Attorney, New York, NY, for the Government.

Mark B. Gombiner, Esq., Federal Defenders of New York, Inc., New York, NY, for Defendant.

## OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge:

## I. INTRODUCTION

Defendant, Falikou Kone, moves to suppress evidence uncovered during court-ordered searches of his home and locker. At the time of the searches, Kone was serving a federal term of supervised release, but no statute, special condition of release, or regulation authorized a warrantless search of his home. Prior to each search, a probation officer obtained an "Order" from a federal district court judge authorizing the search. Neither the Orders nor the affidavits stated that there was probable cause for the search. For the following reasons, the motion to suppress is granted,

## II. FACTUAL BACKGROUND

In August 2007, Falikou Kone was serving a term of supervised release pursuant to a sentence imposed by the Honorable Harold Baer on July 23, 2004. Kone began serving his term of supervised release in January of 2005.

Kone's terms of supervised release were governed by the Standard Conditions of Supervision. Judge Baer did not impose any special condition of release authorizing warrantless searches. One of the standard conditions provided that Kone shall permit a probation officer to visit him at any time at his home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.

On August 3, 2007, a United States Probation Officer filed a sworn affidavit before the Honorable George B. Daniels, of the Southern District of New York, requesting permission to search Kone's residence, and two automobiles allegedly operated by Kone, for evidence relating to the suspected manufacture and possession of fraudulent checks. The affidavit stated the following:

> Inasmuch as the U.S. Probation Office has received credible information from Special Agent Ron Smally [sic] of the United States Secret Service, and a co-operating individual working with the United States Secret Service, with personal knowledge of the illegal activity of Falikou Kone, suspected to be involved in illegal activity, specifically, the possession and manufacturing of fraudulent checks, located at his residence, 367 East 158th Street, Apartment # 2, Bronx, N.Y. 10451, a rental property.

> Specifically, following the recent arrest of two individuals by the United States Secret Service and the Federal Bureau of Investigation, these two individuals provided statements implicating Falikou Kone, in a check cashing scheme involving fraudulently altered checks. In addition, the cooperating individuals indicated that Falikou has equipment in his residence to remove existing data on the checks using an acid wash, and comput-

er equipment to enter false data on the checks.

The cooperating individuals have personally observed Falikou Kone in a Black Audi with Pennsylvania registration and a Blue Cayenne Porsche, registration, unknown, during the course of the conspiracy to cash/deposit the fraudulent checks. Falikou Kone has not reported ownership, or operation, of either of these vehicles to his U.S. Probation Officer.

It is therefore requested that Your Honor grant permission for the U.S. Probation Officers to search said vehicles that are known to have been used by Falikou during the course of his illegal conduct, or any vehicle in his control and custody at the time of the execution of warrant, and the said residence located at 367 East 158th Street, Apt # 2, Bronx, N.Y. 10451, a residence verified to be true by the U.S. Probation officer for the Southern District of New York.[1]

Based on this affidavit, Judge Daniels issued an "Order to Search Residence" ("Order") to search Kone's residence and any automobiles under the defendant's care and control.[2] The Order, which was drafted and requested by probation officers, was not labeled a "warrant." Indeed, as discussed below, probation officers are not authorized to request federal search warrants. The sole authority cited for the Order was the All Writs Act, 28 U.S.C. § 1651.[3] The Order did not state that it issued upon a judicial finding of probable cause for the search. Similarly, the affidavit did not assert, or request a judicial

finding, that there was probable cause to conduct the search.

The Order was executed seven days later by probation officers accompanied by Secret Service agents. At the time, Kone lived in an apartment in the Bronx with his two children and his wife. The officers did not find the "acid wash" referred to by the informants. However, inside Kone's apartment, the officers recovered a computer, printer, typewriter, United States Treasury checks, multiple cellular phones, U.S. Postal Money Orders, credit cards, H & R Block cards, papers with names and Social Security numbers, photocopies of Social Security cards, and W–2 forms. Inside Kone's wallet, the officers found a license bearing the name of "Amadou Conte," along with an access code for the Deluxe Storage Facility in the Bronx. In addition, Kone had a Porsche Cayenne outside the apartment. During the search of the Porsche, the officers recovered a receipt for locker number 1215 at the Deluxe Storage Facility in the name of Amadou Conte.

Based largely on the evidence obtained during these searches, a different probation officer submitted a sworn affidavit to the Honorable Kimba M. Wood, seeking permission to search the storage locker.[4] Like the first affidavit, this affidavit did not assert, or request a judicial finding, that there was probable cause to search the locker. The probation officers again prepared an Order, entitled an "Order to Search Storage Facility," which, like the first Order, was not labeled a warrant and made no explicit finding that there was probable cause to conduct the search.

---

1. 8/3/07 Affidavit of Probation Officer Claudell Brehon, Ex. A to Kone's Memorandum of Law and Fact in Support of Motion to Suppress Physical Evidence ("Def. Mem.").

2. *See* 8/3/07 Order, Ex. B to Def. Mem.

3. *Id.*

4. *See* 8/10/07 Affidavit of Supervising Probation Officer Timothy Murphy, Ex. C to Def. Mem.

Pursuant to this Order, signed by Chief Judge Wood, probation officers and law enforcement agents searched Kone's locker and found a large volume of suspected contraband, including bank records, credit and debit cards, altered passports, and computer equipment.

Kone now moves to suppress the evidence found in the search of his residence and the locker on the grounds that (a) a warrant was required for each search and (b) the Orders, which did not purport to issue upon probable cause, were not warrants.

The Government does not contest that a warrant was constitutionally required in these circumstances, absent a recognized exception to the warrant requirement. Further, the Government does not argue that any exception to the warrant requirement applied: for example, the Government does not contend that Kone consented to the search, that exigent circumstances justified the search, or that any of the items seized during the searches were found in plain view. Although the probation officer was authorized to make a warrantless home *visit*, the Government concedes that the evidence was uncovered pursuant to *searches* of Kone's home. Finally, the Government agrees that, as with any other putative warrant, these Orders were not valid unless they issued upon probable cause.[5] The Government argues, simply, that the Orders were the equivalent of warrants and that they issued upon probable cause. To the extent probable cause was lacking, the Government argues that suppression is not warranted because the officers relied in good-faith on the issuance of the Orders.

In explaining why the probation officers sought an Order, rather than a federal search warrant, the Government states:

[P]robation officers overseeing defendants on supervised release are not considered 'federal law enforcement officers' within the meaning of Rule 41 of the Federal Rules of Criminal Procedure. *See* Fed.R.Crim.P. 41(h); 28 C.F.R. § 60.2. Therefore, a probation officer's request for a search warrant is a situation 'not otherwise covered by statute,' rendering 28 U.S.C. § 1651 [*i.e.*, the "All Writs Act"] the appropriate authority under which the court should issue such an order.[6]

As this explanation suggests, and as the Government further explained at oral argument, the probation officers sought Orders under the All Writs Act, rather than search warrants, because they understood that they were not authorized to seek search warrants under Rule 41 and the cited regulation.[7] In a letter brief filed after oral argument, the Government confirmed that the probation office drafted the Orders.[8]

---

**5.** *See* 9/29/08 Transcript of Oral Argument ("Tr."), at 17 ("THE COURT: There is this alternative lesser standard to probable cause called reasonable suspicion. But you are not arguing that. You are saying, it is a warrant, it is the equivalent of a warrant, we have to believe the applicant had to show probable cause, and he did. If there was any failure, you should use the good faith exception. But you are not telling me to apply a lesser reasonable suspicion requirement [Assistant U.S. Attorney]: Yes.").

**6.** Government's Letter Brief in Opposition to Motion to Suppress, at 7 ("Gov't Mem.").

**7.** *See* Tr. at 16 (explaining that because "probation officers technically don't fall within the parameters of Rule 41 ... a probation officer wanted to find a way so that they could, upon a finding of probable cause, request an order to search a premises.").

**8.** *See* 10/16/08 Letter from AUSA Edward Y. Kim ("[T]he affidavit and search order dated August 3, 2007 were drafted by Supervising U.S. Probation Officer Timothy Murphy after

There is little case law on the topic of search Orders issued to probation officers under the sole authority of the All Writs Act. The parties and the Court have located only one case discussing such Orders and, in that case, the question whether the Order was the equivalent of a Fourth Amendment warrant appears not to have been raised—perhaps because in that case, unlike this case, the affidavit asserted that there was probable cause to conduct the search.[9] For ease of discussion, the term "Order" in the discussion below refers to the first Order, unless otherwise indicated. For purposes of this motion, the Orders raise identical issues.

### III. ISSUES PRESENTED

■ This case raises several difficult questions at the core of Fourth Amendment jurisprudence. To the extent the Government has not waived the issue, the first question is whether a warrant is presumptively required to authorize a probation officer [10] to search the home of a person on federal supervised release, where no statute, regulation or condition of release authorizes a warrantless search. If a Fourth Amendment warrant was required, the second question—again to the extent the Government has not waived the

issue—is whether a judicial finding of probable cause was a necessary prerequisite to the issuance of this warrant. If so, the third question is whether these Orders necessarily issued upon a judicial *finding* of probable cause. If not, the final question is whether the probation officers acted in good-faith reliance on the Orders in conducting the search.

### IV. APPLICABLE LAW

#### A. The Warrant Requirement and Supervised Release

■ "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate Governmental interests." [11] "The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." [12] The exceptions to the warrant requirement are "jealously and carefully drawn" and "the burden is on those seeking the exemption to show the

consultation with U.S. Probation Officer Claudell Brehon and Supervising U.S. Probation Officer Peter Merrigan. Officers Brehon and Murphy then presented the affidavit and order to the Honorable George B. Daniels for approval.").

**9.** *See United States v. Goldenberg,* No. 05 Cr. 1034, 2006 WL 266564 (S.D.N.Y. Feb. 3, 2006).

**10.** A person on supervised release is supervised by a probation officer, who acts as an officer of the Court. *See United States v. Reyes,* 283 F.3d 446, 454–7 (2d Cir.2002). This distinguishes probation officers from parole officers. "In contrast to persons on ... supervised release who are under the jurisdic-

tion of the sentencing court, individuals released on parole ... remain in the legal custody of the Attorney General while serving a portion of their sentence of imprisonment in the community." *Id.* at 456 n. 2 (quotation marks omitted). "In his capacity of confidential adviser to the court, the federal probation officer has been regarded as the court's 'eyes and ears,' a neutral information gatherer with loyalties to no one but the court." *Id.* at 455 (quotation marks omitted).

**11.** *United States v. Knights,* 534 U.S. 112, 118–19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (quotation marks omitted).

**12.** *Franks v. Delaware,* 438 U.S. 154, 164, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

need for it." [13] In determining whether a warrant is a necessary safeguard in a given class of cases, "the [Supreme] Court has weighed the public interest against the Fourth Amendment interest of the individual...." [14] Regarding the latter, "[i]t is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." [15] It is thus "a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." [16]

In two lines of cases drawing on different rationales, the Supreme Court has permitted warrantless searches of parolees and probationers in situations where a governing statute, regulation, or condition of parole authorized the warrantless search. *First*, in *Griffin v. Wisconsin*, the Supreme Court held that the warrantless search of a probationer's home was " 'reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers." [17] The Court reasoned that "[s]upervision [of probationers] ... is a 'special need' of the State *permitting* a degree of impingement upon privacy that would not be constitutional if applied to the public at large." [18] The Court was careful not to imply that warrantless searches of probationers were permissible in the *absence* of a state regulation that explicitly authorized warrantless searches. [19] To do so, the Court would have to decide "a new principle of law," which the Court found "unnecessary to embrace," that "any search of a probationer's home by a probation officer satisfies the Fourth Amendment as long as the information possessed by the officer satisfies a federal 'reasonable grounds' standard." [20] In lieu of deciding this new principle of law, the Court's analysis focused on the reasonableness of the *specific state regulation* at issue, and the Court upheld the search only because the "regulation ... itself satisfies the Fourth Amendment's reasonableness requirement." [21] Thus, *Griffin* cannot be used to justify a warrantless search that was not carried out pursuant to a state law, regulation, or condition of probation that authorized the warrantless search and that is itself reasonable. [22] The Second Circuit recently so explained in a decision applying *Griffin* to

---

13. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (quotation marks omitted).

14. *United States v. Martinez–Fuerte*, 428 U.S. 543, 555, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

15. *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (quotations omitted).

16. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (quotations omitted).

17. 483 U.S. 868, 880, 107 S.Ct. 3164, 97 L.Ed.2d 709(1987).

18. *Id.* at 875, 107 S.Ct. 3164 (emphasis added).

19. *See id.* at 880 (emphasizing that the 'special needs' analysis, which rested on the reasonableness of Wisconsin's specific state regulation, "ma[de] it unnecessary to consider whether, as the court below held and the State urges, *any* search of a probationer's home by a probation officer is lawful when there are 'reasonable grounds' to believe contraband is present.").

20. *Id.*

21. *Id.*

22. *See id.* at 880 n. 8, 107 S.Ct. 3164 (stating that "the only regulation upon which we *rely* for our constitutional decision is that which permits a warrantless search on 'reasonable grounds.' " (emphasis added)).

a warrantless search authorized by state law:

> Although probationers and parolees are subject to "a degree of impingement upon privacy that would not be constitutional if applied to the public at large," *the law requires that such greater intrusions occur pursuant to a rule or regulation "that itself satisfies the Fourth Amendment's reasonableness requirement."*[23]

■ Second, in *Samson v. California*,[24] the Court applied its "general Fourth Amendment approach"—rather than the *Griffin* special needs analysis—to uphold a warrantless, suspicionless search of a parolee performed in compliance with a valid parole agreement authorizing warrantless, suspicionless searches.[25] Using the general Fourth Amendment approach, the *Samson* Court examined "the totality of the circumstances" to determine whether the search was reasonable.[26] Under this test, the reasonableness of a search "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."[27]

In *Samson*, the search was conducted pursuant to a state law that authorized warrantless, suspicionless searches of parolees. The Court determined that the state law was reasonably necessary to meet the state's needs, in light of the parolee's reduced expectation of privacy against warrantless searches. On the first side of the equation—pertaining to the supervisee's privacy interest—the Court first noted that on the continuum of state-imposed punishments, "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation."[28] The Court next noted that "parolees like petitioner," who live in California, "have severely diminished expectations of privacy by virtue of their status alone" because California requires all parolees to "comply with all of the terms and conditions of parole, including mandatory drug tests, restrictions on association with felons or gang members, and mandatory meetings with parole officers."[29] Finally, and most important to the dispositive question of whether Samson had a reasonable expectation of privacy against a warrantless search of his home, the Court found it "salient" that (i) "California law[ ] requir[ed] inmates who opt for parole to submit to suspicionless searches by a parole officer or other peace officer at any time," and (ii) the parolee "signed an order submitting to th[is parole search] condition and thus was 'unambiguously' aware of it."[30] These two facts were "salient" because the parolee's "acceptance of a clear and unambiguous search condition *'significantly diminished* [the parolee's] reasonable expectation of privacy'*" against warrantless, suspicionless searches.[31]

**23.** *United States v. Newton,* 369 F.3d 659, 665 (2d Cir.2004) (quoting *Griffin,* 483 U.S. at 875, 107 S.Ct. 3164) (emphasis added).

**24.** 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006).

**25.** *Id.* at 848, 126 S.Ct. 2193.

**26.** *Id.* (quotation marks omitted).

**27.** *Id.* (quotation marks omitted).

**28.** *Id.* at 850, 126 S.Ct. 2193.

**29.** *Id.* at 851, 126 S.Ct. 2193.

**30.** *Id.* at 852, 126 S.Ct. 2193 (quotation marks omitted).

**31.** *Id.* (quoting *Knights,* 534 U.S. at 120, 122 S.Ct. 587) (emphasis added).

On the second side of the equation—relating to "the degree to which [the intrusion] is needed for the promotion of legitimate Governmental interests" [32]—the Court noted that the "*California Legislature* has concluded that, given the number of inmates the State paroles and its high recidivism rate, a requirement that searches be based on individualized suspicion would undermine the State's ability to effectively supervise parolees and protect the public from criminal acts by reoffenders." [33] "This conclusion" of the California Legislature, the Court concluded, "makes eminent sense." [34] During this discussion, the Court made it pellucidly clear that, as in *Griffin*, the Court was not analyzing the free-standing power of Government officials to search parolees *absent* explicit authorization from state law or a parole condition. Rather, as the Court emphasized, its analysis necessarily turned on the content and reasonableness of *the specific state law* authorizing the search:

[Petitioner's] reliance on the practices of jurisdictions other than California ... is misplaced. That some States and the

Federal Government require a level of individualized suspicion is of little relevance to our determination whether California's supervisory system is drawn to meet its needs and is reasonable, taking into account a parolee's substantially diminished expectation of privacy.[35]

As Judge Michael W. McConnell noted, writing recently for the Tenth Circuit in reference to this passage, "[p]arolee searches are therefore an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by the content of state law." [36] Thus, *Samson*, like *Griffin*, has little to no bearing on whether a warrantless search *not* authorized by statute, regulation or condition of supervision is permissible.[37]

The Circuit courts, surprisingly, are somewhat divided on whether the Fourth Amendment warrant requirement presumptively applies to probationer or parolee searches where no governing law or parole condition authorizes the warrantless search.[38] The Second Circuit, however, has spoken on the issue, albeit in a case involving a probationer rather than a per-

---

**32.** *Id.* at 848, 126 S.Ct. 2193.

**33.** *Id.* at 854, 126 S.Ct. 2193.

**34.** *Id.*

**35.** *Id.* at 855, 126 S.Ct. 2193.

**36.** *United States v. Freeman*, 479 F.3d 743, 747–48 (10th Cir.2007).

**37.** *See id.* ("*Samson* does not represent a blanket approval for warrantless parolee or probationer searches by general law enforcement officers without reasonable suspicion; rather, the Court approved the constitutionality of such searches only when authorized under state law.").

**38.** *Compare United States v. Carnes*, 309 F.3d 950, 962–63 (6th Cir.2002) (holding that warrantless search by parole and police officers was unreasonable where neither parole agree-

ment nor state regulation authorized searches without warrant) *with United States v. Keith*, 375 F.3d 346, 350 (5th Cir.2004) (concluding that warrantless search by probation and police officers was reasonable despite lack of probation condition or state regulation authorizing such searches because "the needs of the probation system outweigh the privacy rights of the probationers generally"); *compare also Freeman*, 479 F.3d at 748 ("*Samson* does not represent a blanket approval for warrantless parolee or probationer searches by general law enforcement officers without reasonable suspicion; rather, the Court approved the constitutionality of such searches only when authorized under state law.") *with United States v. Yuknavich*, 419 F.3d 1302, 1310–11 (11th Cir.2005) (holding that, in absence of probation condition authorizing searches generally, warrantless search of computer by probation officers was a reasonable means of enforcing specific condition restricting Internet usage).

son on supervised release. In *United States v. Rea*—a decision that predated *Griffin* and *Samson*, but which has not been overruled—the Second Circuit held that the Fourth Amendment's warrant requirement presumptively applies to the search of a probationer's home, where no state law or condition of probation authorizes a warrantless search of the probationer.[39] In *Rea*, the probationer was subject "to conditions of probation which generally tend[ed] to diminish his otherwise valid expectations of privacy from intrusion by Governmental authorities," including, as here, the condition that the "probation officer c[ould] enter the probationer's home without a warrant in order to make supervisory visits."[40] The Court held that, notwithstanding the probationer's reduced expectations of privacy, the presumptive warrant requirement applied in these circumstances:

> [N]o statutory provision exempts a probation officer from the requirement that he obtain a warrant before searching the home of a probationer. There also has been no showing that upholding the warrant requirements for searches of probationers' homes will seriously impede the accomplishment of the dual law enforcement and rehabilitative goals of probation. Therefore, we hold that a probation officer is required to obtain a warrant prior to conducting a search of a probationer's home unless the search falls within a judicially recognized exception to the warrant requirement.[41]

More recently, in *United States v. Reyes*, the Second Circuit upheld the constitutionality of a warrantless *visit* to the home of a person on supervised released, but the Court emphasized that warrantless home *visits* were specifically authorized by statute and that home *searches* raise different issues.[42] The Second Circuit has upheld other warrantless searches of probationers, parolees, and persons on supervised release but only in instances where either a law or a condition of release explicitly permitted such searches.[43]

## B. The Hallmarks of a Fourth Amendment Warrant

 The Constitution explicitly states that "no Warrants shall issue, but upon probable cause."[44] Thus, "[t]he Constitution prescribes ... that where the matter is of such a nature as to require a judicial warrant, it is also of such a nature

39. 678 F.2d 382 (2d Cir.1982).

40. *Id.* at 387.

41. *Id.* at 387–88.

42. 283 F.3d 446, 462 (2d Cir.2002) ("[W]e hold that because home visits 'at any time' are conducted pursuant to a *court-imposed condition* of federal supervised release of which the supervisee is aware, and because a home visit is far less intrusive than a *probation search,* probation officers conducting a *home visit* are not subject to the reasonable suspicion standard applicable to *probation searches* under *Knights*").

43. *See, e.g., United States v. Chirino*, 483 F.3d 141 (2d Cir.2007) (upholding warrantless search of probationer's bedroom where defendant's conditions of probation required him to permit probation officers to search his residence); *United States v. Newton*, 369 F.3d 659 (2d Cir.2004) (upholding reasonableness of search of parolee's residence where New York state parole regulations permitted warrantless searches and where parolee consented to such conditions); *United States v. Thomas*, 729 F.2d 120, 123 (2d Cir.1984) (upholding warrantless search of parolee's clothing during parolee's visit to parole officer's office, where parolee was alerted to conditions of parole, which "included consent to searches and inspections of his person and property by his parole officer.").

44. U.S. Const. amend. IV.

as to require probable cause." [45] Although the Supreme Court has "arguably come to permit an exception to that prescription for administrative search warrants, which may but do not necessarily have to be issued by courts, [the Court] h[as] never done so for constitutionally mandated judicial warrants. There it remains true that '[i]f a search warrant be constitutionally required, the requirement cannot be flexibly interpreted to dispense with the rigorous constitutional restrictions for its issue.' " [46]

 Probable cause is "a fluid concept ... not readily, or even usefully, reduced to a neat set of legal rules." [47] However, probable cause requires more than a "mere suspicion" of wrongdoing.[48] Thus, where probable cause is required, a finding of reasonable suspicion will not suffice.

 In order for a warrant to issue upon probable cause, "a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the *magistrate* to make an independent evaluation of the matter." [49] "Sufficient information must be presented to the *magistrate* to allow *that official to determine probable cause*; his action cannot be a mere ratification of the bare conclusions of others." [50] Further, because the probable cause determination must be "supported by Oath or affirmation," [51] the "*affidavit* must provide the magistrate with a substantial basis for determining the existence of probable cause." [52]

 The defining features of a judicial search warrant are that: (a) it must be issued by a judicial officer; (b) the judicial officer must find that there is probable cause to believe that evidence of contraband is present in the place to be searched; (c) the probable cause finding must be supported by the information contained in the oath or affidavit; and (d) the warrant must describe with particularity the places to be searched and the things to be seized.[53]

In *Groh v. Ramirez*, the Supreme Court held that a putative warrant, which was labeled a "warrant" and signed by a judicial officer, but which failed to state with particularity the things to be seized, was "so obviously deficient that ... the search [was] 'warrantless' within the meaning of [the] case law." [54] The Court so held, notwithstanding the fact that the unincorporated affidavit stated with particularity the items to be seized.[55] The Court explained that "[t]he presence of a search warrant serves a high function ... and that high function is not necessarily vindicated when

---

**45.** *Griffin*, 483 U.S. at 877, 107 S.Ct. 3164.

**46.** *Id.* (*quoting Frank v. Maryland*, 359 U.S. 360, 373, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959)). *Accord United States v. Grubbs*, 547 U.S. 90, 98, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006) (noting that when a warrant is required, "probable cause is the quintessential precondition to the valid exercise of executive power." (quotation marks omitted)).

**47.** *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**48.** *Id.* at 231, 103 S.Ct. 2317.

**49.** *Franks*, 438 U.S. at 165, 98 S.Ct. 2674.

**50.** *Gates*, 462 U.S. at 239, 103 S.Ct. 2317 (emphasis added).

**51.** U.S. Const. amend. IV.

**52.** *Gates*, 462 U.S. at 269, 103 S.Ct. 2317 (emphasis added).

**53.** *See Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

**54.** *Id.* at 558, 124 S.Ct. 1284.

**55.** *See id.*

some other document, somewhere, says something about the objects of the search." [56] Further, the Court held that the search was not "functionally equivalent to a search authorized by a valid warrant," because "unless the particular items described in the affidavit are also set forth in the warrant itself ... there can be *no written assurance that the Magistrate actually found probable cause* to search for, and to seize, every item mentioned in the affidavit." [57] Because the search was "warrantless," and was a search of a home, the Court held that the search was unreasonable.[58] As the Court explained, "the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant." [59]

### C. Good Faith Reliance

 "[T]he exclusionary rule is designed to deter police misconduct," not the conduct of judicial officers, and this purpose is not served by "deter[ring] objectively reasonable conduct" of the searching officers.[60] Because the Warrant Clause makes it "the *magistrate*'s responsibility to determine whether the officer's allegations establish probable cause," "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." [61] In such circumstances, the constitutional error was committed by the magistrate, not the police. Accordingly, in order to encourage police officers to use the warrant process, the *Leon* Court modified the exclusionary rule "so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." [62]

 There are important limitations and exceptions to the *Leon* doctrine. Most important, for the *Leon* good faith exception to apply, "the officer's reliance on the magistrate's probable-cause determination ... must be objectively reasonable." [63] In applying this principle, the *Leon* Court noted that, "depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." [64]

In *Groh*, the Supreme Court held that an officer could not rely in good faith [65] on a putative warrant that failed to describe

---

**56.** *Id.* at 557, 124 S.Ct. 1284.

**57.** *Id.* at 558, 560, 124 S.Ct. 1284 (emphasis added).

**58.** *See id.* at 559, 124 S.Ct. 1284 (noting that the Supreme Court's cases "have firmly established the basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable" (quotation marks omitted)).

**59.** *Id.* at 559, 124 S.Ct. 1284.

**60.** *United States v. Leon,* 468 U.S. 897, 916, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**61.** *Id.* at 922, 104 S.Ct. 3405 (quotation marks omitted).

**62.** *Id.* at 900, 104 S.Ct. 3405.

**63.** *Id.*

**64.** *Id.* at 923, 104 S.Ct. 3405 (emphasis added).

**65.** Although *Groh* involved the application of the qualified immunity doctrine, the Court explained that "the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an officer." 540 U.S. at 565 n. 8, 124 S.Ct. 1284 (quotation marks omitted).

with particularity the things to be seized, even though the officer's affidavit described with particularity the things to be seized and the search was limited to the particular items described in the affidavit.[66] As discussed above, the Court first held that the search was warrantless. In discussing why the good faith exception did not apply, the Court explained that "[g]iven that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid."[67] Although the Magistrate signed the warrant, this was not a case where the error was committed exclusively by the "judge, not the police officers."[68] The Court gave two independent reasons for this conclusion. *First,* "[b]ecause petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid."[69] *Second,* the defect was so glaring that, even if the Magistrate had drafted the warrant, the defect was one that "any reasonable police officer would have known was constitutionally fatal."[70]

The Second Circuit has explained that the good-faith exception applies with less force to requests made by probation officers than to requests made by police officers, because probation officers, who are neutral officers of the *court,* are more trusted by courts to provide accurate information and to make accurate assessments of what the supervision requires:

> [A] police officer applying for an arrest warrant appears in a partisan role. The magistrate to whom the application is addressed is automatically on notice that the application comes from an interested party and therefore knows that scrutiny is warranted. The probation officer, on the other hand, is not a partisan advocate aligned with either the prosecution or the defendant. He is a neutral adviser to the court.[71]

## D. All Writs Act

"The power to obtain warrants 'in aid of jurisdiction' [under the All Writs Act] is an indispensable law enforcement tool in the field of criminal justice."[72] However, "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."[73] As the Supreme Court explained in *Carlisle v. United States,* when a rule of

---

66. *See id.* at 563–64, 124 S.Ct. 1284.

67. *Id.* at 564, 124 S.Ct. 1284.

68. *Id.* at 564 n. 4, 124 S.Ct. 1284 (quotation marks omitted).

69. *Id.* at 563–64, 124 S.Ct. 1284.

70. *Id.*

71. *Warner v. Orange County Dept. of Probation,* 115 F.3d 1068, 1073 (2d Cir.1997). Although the question presented in *Warner* was whether a probation officer could be held liable under section 1983 for recommending an overly restrictive condition of supervision,

the *Warner* Court explained, in broad terms, that probation officers have less reason than police officers to rely in good faith on the intervening decision of a judge.

72. *Blackie's House of Beef, Inc. v. Castillo,* 659 F.2d 1211, 1222 (D.C.Cir.1981) (inferring "from the provisions of the Immigration and Nationality Act some predicate power to obtain search warrants in aid of the enforcement activities specifically delineated in the statute, although the statute does not explicitly authorize such warrants").

73. *Pennsylvania Bureau of Correction v. United States Marshals Serv.,* 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985).

criminal procedure addresses a particular issue, it "provides the applicable law" and displaces the residual authority of the All Writs Act.[74]

 Rule 41 governs the practice of issuing federal search warrants. Although the Rule does not apply where a specific statute controls, or in special circumstances,[75] the provisions of the Rule, where they apply, are mandatory and reflect the Supreme Court's "[r]ule-embodied polic[ies] designed to protect the integrity of the federal courts or to govern the conduct of federal officers." [76] Among these rule-embodied policies, Rule 41 provides "that a federal law enforcement officer or an attorney for the Government *must* request [a search warrant's] issuance." [77] As the Government concedes,[78] probation officers are not law enforcement officers authorized to request search warrants within the meaning of Rule 41.[79]

## V. DISCUSSION

### A. A Warrant Was Required to Search Kone's Home

 The Government concedes that the probation officers needed to obtain a warrant that satisfied all of the requirements of the Fourth Amendment in order to search Kone's home. This is not surprising given that no special condition of supervised release had been imposed on Kone that required him to consent to a warrantless search of his home. Similarly, there is no federal or state statute or regulation that permitted the federal probation officers to conduct a warrantless search of Kone's home.[80] Thus, the Government's sole argument is that the Order obtained by the probation officers was a warrant satisfying the requirements of the Fourth Amendment.[81]

### B. The Requirements Necessary to Obtain a Warrant Were Not Met

 The Government's argument fails, however, because the Order, unlike a Fourth Amendment warrant, did not necessarily issue upon a *finding* of probable cause. Although the Order was not labeled a "warrant," "nomenclature is not

**74.** *Carlisle v. United States*, 517 U.S. 416, 429, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (quotation marks omitted). In *Carlisle*, the Supreme Court held that, because Federal Rule of Criminal Procedure 29 addressed the issue of when a new trial can be granted, courts had no authority under the All Writs Act to grant a writ of coram nobis in circumstances where Rule 29 did not specifically authorize a new trial. *See id.*

**75.** Fed. R.Crim. P. 41(a)(1).

**76.** *United States v. Burke,* 517 F.2d 377, 385 (2d Cir.1975) (Friendly, J.).

**77.** *Id.* (emphasis added). The language in Rule 41(a) was amended in 1991, in a manner that makes it less clear that *only* federal officers may seek warrants, but the Advisory Committee Note explained that this requirement still applied: "[t]he amendment is not intended to expand the class of persons authorized to request a warrant and the language 'upon request of a federal law enforcement officer,' modifies all warrants covered by Rule 41."

**78.** *See* Gov't Mem., at 7.

**79.** *See* 28 C.F.R. § 60.2 (defining the "law enforcement officers" who are authorized to make federal search warrant requests).

**80.** This distinguishes the instant case from the decisions in *Griffin* and *Samson, supra*, both of which permitted warrantless searches because of explicit state regulations authorizing such searches, where the Court found that the regulations themselves were reasonable.

**81.** Nowhere does the Government argue that any exception to the warrant requirement should apply.

dispositive." [82] The label, nonetheless, is significant. In a typical case, where a putative warrant is labeled a "warrant" and explicitly purports to issue under Rule 41 and the Fourth Amendment's Warrant Clause, the omission of the term "probable cause" from the face of the warrant would not cast the slightest doubt on the conclusion that the warrant necessarily issued upon a judicial *finding* of probable cause. The reason, simply, is that a warrant, which is labeled a "warrant" and that purports to issue under Rule 41 and the Fourth Amendment, may issue *only* upon a judicial finding of probable cause. [83] The Fourth Amendment requires no more than this implied finding. [84]

This case, however, is atypical. The putative warrant was not labeled a "warrant." It was termed an "Order." As the Government concedes, unlike a traditional warrant, there is no rule, statute or case law [85] providing that such Orders may issue *only* upon a finding of probable cause.

Indeed, as the Government concedes, there is no statute, rule or regulation governing the issuance of such Orders at all. [86] Unlike warrants, which are deeply entrenched in our Constitutional jurisprudence and are governed by law, search Orders issued to probation officers, under the sole authority of the All Writs Act, are unfamiliar and unregulated entities. Thus, there is no basis to conclude that the Order necessarily issued upon a judicial finding of probable cause, where, as here, no such finding was recited on the face of the warrant.

■ Indeed, for the following reasons, the most reasonable inference for the issuing judge to draw was that the probation officers, in requesting the Order, sought something *less* than a Fourth Amendment warrant. *First,* many persons on supervised release are subject to special search conditions that specifically authorize warrantless searches, on less than probable cause. [87] The judge may have presumed

---

82. *Milner v. Duncklee,* 460 F.Supp.2d 360, 378 (D.Conn.2006) (discussing whether a state court "capias"—a writ authorizing the home arrest of a person who failed to appear in court for a civil hearing—satisfied the Fourth Amendment arrest warrant requirement, when the capias did not explicitly issue on a judicial finding of probable cause).

83. *See Walczyk v. Rio,* 496 F.3d 139, 155–56 (2d Cir.2007) ("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue *only* upon a showing of probable cause." (emphasis added)).

84. Unlike the particularity requirement, the Fourth Amendment does not explicitly require that a warrant *state* that a finding of probable cause was made. *Cf. Grubbs,* 547 U.S. at 98, 126 S.Ct. 1494 ("The Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential precondition to the valid exercise of executive power."). The dispositive question here is whether the Order necessarily issued upon

a *finding* of probable cause, not whether the Order stated that it did.

85. As discussed, there is only one case discussing such an Order and that case did not discuss whether such an Order may issue only upon a finding of probable cause.

86. *See* Gov't Mem., at 7 (arguing that the All Writs Act provided the authority for the Orders precisely because no statute or rule governs the issuance of the Orders).

87. Federal judges are permitted to impose warrantless search conditions by way of their general power to impose any special condition of release that involves no "greater deprivation of liberty than is reasonably necessary" to serve the goals of the sentence, 18 U.S.C. § 3583(d)(2), or specifically by statute in certain circumstances, *see, e.g.,* 18 U.S.C. § 3583(d) ("The court *may* order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his

that the Order was requested pursuant to such a special search condition, which required no finding of probable cause. *Second,* if the probation officers believed that the circumstances called for a *search warrant,* they should have referred the matter to a law enforcement officer, or an attorney for the Government, to request the warrant, as required by Rule 41.[88] Since this was not done, the judge had little reason to infer that the probation officers, who were precluded from seeking a search warrant,[89] sought the *equivalent* of a search warrant by seeking an Order under the All Writs Act.[90] *Third,* and relatedly, the judge may have concluded that the probation officers were precluded from seeking the *equivalent* of a federal search warrant under the All Writs Act, given that: (a) Rule 41 governs the issuance of federal search warrants; (b) probation officers are precluded from seeking search warrants under Rule 41; and (c) the All Writs Act provides no residual authority to issue a warrant, or its equivalent, when a

Rule—here Rule 41—provides the applicable law.

Taken together, these considerations establish not only that the Order may have issued without a judicial finding of probable cause, but that the judge had very good reasons to conclude that the Order was not intended to be the equivalent of a Fourth Amendment warrant. Accordingly, the judicial approval of the Order was not the equivalent of judicial approval of a warrant, which would have implied a finding of probable cause. Therefore, the search of Kone's home was a warrantless search [91]—presumptively unreasonable.

## C. The Good Faith Exception to the Exclusionary Rule Cannot Apply

 The Government argues that even if the Order was deficient, the *Leon* exception to the exclusionary rule should apply because the evidence was seized in objectively reasonable reliance on an Or-

person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, *with or without a warrant,* by any law enforcement or probation officer with *reasonable suspicion* concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions." (emphases added)). Where a special condition of release permits the search of a supervisee without probable cause, a probation officer could undoubtedly seek a judicial *Order,* authorizing the search, under the All Writs Act.

**88.** *See* Fed. R. Cr. P. 41.

**89.** *See* 28 C.F.R. § 60.2. *See also* 56 F.R. 30871, 30873 (July 8, 1991) ("U.S. Probation Officers have not, traditionally, been granted intrusive search and seizure authority over federal parolees. The Commission has been reluctant to authorize such a role for U.S. Probation Officers, primarily because of safe-

ty concerns, and the fact that many U.S. Probation Officers have neither the training nor the equipment for what is '* * * apt to be a hazardous duty.' ") (quoting *United States v. Cardona,* 903 F.2d 60, 68 (1st Cir.1990)).

**90.** It bears emphasis that the issue in this case is *not* whether the probation officers violated Rule 41 or a federal regulation. For even if that Rule and Regulation were violated, no constitutional error would result. The point here is that the longstanding practice of precluding probation officers from seeking federal search warrants provided the judge with a very good reason to conclude that the requested Order, which was prepared and requested by probation officers, was not the *equivalent* of a federal search warrant—which probation officers may not request.

**91.** *See Milner,* 460 F.Supp.2d at 378 (holding that a state court "capias" authorizing a home arrest for failure to appear in court was not equivalent to a Fourth Amendment warrant "because a capias can issue without a probable cause determination").

der issued by a neutral judge. The first difficulty with this argument is that this case does not fit well within the framework of *Leon*, which was based on the premise, common to any case where the officer seeks a "warrant," that "it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause." [92] Here, by contrast, the constitutional defect in the "Order" was precisely that it *failed* to squarely place on the Magistrate the responsibility of making a probable cause determination. Furthermore, a primary goal of *Leon* is to encourage officers to use the warrant process. Here, the probation officers decided to *eschew* the warrant process in order to seek a novel type of writ, entitled an "Order," which was governed by no law. *Leon* counsels *against* the type of experimental practice adopted by the probation officers in this case.

More important, the officers' reliance on this Order was not objectively reasonable because the officers could not reasonably presume that this Order satisfied the Fourth Amendment warrant requirement.[93] The Constitution states that no warrant may issue but upon probable cause; thus, under clearly established law, no reasonable officer could believe that an Order that could issue without a judicial *finding* of probable cause was equivalent to a warrant. As discussed above, the probation officer had no objectively reasonable basis to conclude that the judge issued the Order upon a finding of probable cause. Indeed, the fact that a probation officer sought the Order, rather than a police officer, makes the Government's argument for good-faith reliance significantly weaker: the requests of a partisan police officer solicit a judge's scrutiny in a way that those of a neutral probation officer do not. The judge signed an Order, prepared and requested by a neutral arm of the court, that gave no indication that a probable cause determination was necessary, or was sought. The most likely inference, as discussed above, was that the probation officer—who was barred from requesting a federal search warrant—was seeking something less than a Fourth Amendment warrant. The fact that the Order was prepared by the affiant officer underscores, as it did in *Groh*, that the Constitutional error was committed by the officer, not the judge. The *Leon* good faith exception does not apply.

## VI. CONCLUSION

For the foregoing reasons, I order the evidence seized from Kone's home and his locker suppressed. The Clerk of Court is direct to close the motion. The parties are

---

92. *Leon*, 468 U.S. at 922, 104 S.Ct. 3405 (quotation marks omitted).

93. The Government does not argue that the probation officers had an objectively reasonable belief that a Fourth Amendment warrant was not required. Had the Government made such an argument, however, it would have been without merit. *First*, the *Leon* exception permits good-faith reliance on a putative *warrant*; nothing in *Leon* suggests that an officer might be excused for believing in good faith that a warrant was not required in the first place. *Second*, the law in this Circuit has long been clear that a warrant is required to search a supervisee, where no law or condition of release permits a warrantless search. *Finally*, the sentencing court imposed no special search condition on Kone subjecting him to warrantless searches. This put the probation officer on explicit notice that he was not authorized to conduct a warrantless search of Kone's home. *See* 18 U.S.C. § 3583(f) (directing probation officers to "provide the defendant with a written statement that sets forth *all* the conditions to which the term of supervised release is subject." (emphasis added)).

directed to appear for a conference on November 7 at 2.30p.m.

SO ORDERED.